UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLAY VINSON HAYNES,

           Plaintiff,

  v.

MICK, *et al.*,

           Defendants.

CASE NO. 3:22-cv-05688-JCC-GJL

REPORT AND RECOMMENDATION

NOTED FOR: August 11, 2023

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge Grady J. Leupold. Presently pending before the Court is Defendants Mick, Bourne, and Brickner's Motion for Summary Judgment. Dkt. 33. Plaintiff Clay Vinson Haynes alleges Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they failed to provide him with his CPAP machine. After reviewing the relevant record, the Court concludes Plaintiff has failed to administratively exhaust his claim. Accordingly, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 33) be granted and this case be closed.

## I. BACKGROUND

Plaintiff alleges that, when he entered Washington State Department of Corrections' custody in February 2022, and was housed at Washington Corrections Center ("WCC"), he was unable to retrieve a CPAP machine from WCC's property room that he brought with him into custody. Dkt. 4. He argues futility by contending that Defendants, all three of whom are non-medical employees at WCC, were deliberately indifferent to his serious medical needs when they denied him access to his CPAP machine. *Id*. Plaintiff was transferred from WCC at the end of April 2022. *See* Dkt. 36-1.

Defendants filed the Motion for Summary Judgment, with supporting evidence, on June 2, 2023. Dkts. 33–39. On June 14, 2023, Plaintiff filed a Response with an accompanying Declaration. Dkts. 40–41. Defendants filed a Reply on June 30, 2023. Dkt. 42.

## II. STANDARD OF REVIEW

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute,

requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**III.    DISCUSSION**

Defendants allege Plaintiff failed to exhaust the administrative remedies available to him regarding the claim alleged in the Complaint. Dkt. 33. Plaintiff counters that the grievance process was unavailable to him in several respects, excusing the exhaustion requirement in this case. Dkts. 40, 41.

A.    <u>Legal Standard</u>

Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). The mere fact a plaintiff has filed an initial grievance under a prison's grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust *all* levels of an available grievance procedure before he can initiate litigation. *See id.* at 736–41; *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is still a prerequisite to suit. *Booth*, 532 U.S. at 741. If a claim is not exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

1    Failure to exhaust administrative remedies is properly brought as a summary judgment

2    motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the defendant proves there was

3    an available administrative remedy and the offender failed to exhaust the available remedy, the

4    burden shifts to the plaintiff. The plaintiff must show there was something about his particular

5    claim which made the "existing and generally available administrative remedies effectively

6    unavailable to him." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Hilao v.*

7    *Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

8             B.    <u>Defendants' Evidence</u>

9             Defendants' evidence shows inmates in the custody of the Washington State Department of

10   Corrections ("DOC") may file administrative grievances pertaining to a wide range of issues

11   related to an inmate's incarceration, including challenges to DOC policies, rules and procedures,

12   staff conduct, retaliatory conduct, conduct of other incarcerated individuals, access to medical care,

13   and physical conditions of confinement. Dkt. 38, Smith Dec., ¶ 4; Dkt. 38-1, Ex. 1, DOC

14   Resolution Program Manual ("Manual"), at 7. Certain concerns are not accepted in resolution

15   requests, and this includes duplicate resolution requests about the same concern. Dkt. 38 ¶ 4; Dkt.

16   38-1 at 8–10. Additionally, an inmate cannot submit a resolution request about "an alleged

17   inadequate resolution review or response," because, instead, "[i]ndividuals can express such

18   concerns in their appeal." Dkt. 38-1 at 8. At the time of entry, an inmate is provided information

19   about the Resolution Program and advised that the policy and Manual are maintained in the prison

20   library and are available for review. Dkt. 38 ¶ 3. At an orientation on the Resolution Program,

21   resolution request complaint forms are also made available to inmates. *Id*. ¶ 5.

22            Under DOC policy, the grievance/resolution program procedure consists of four levels of

23   review after an inmate initially seeks informal resolution of a complaint. *Id*. ¶ 6; Dkt. 38-1 at 6, 14–

24

15. At Level 0, the facility's Resolution Specialist receives a written complaint from an inmate. Dkt. 38 ¶ 6; Dkt. 38-1 at 5. The Resolution Specialist determines if the resolution request is acceptable or not by following guidelines outlined in the Manual, sends the request back for more information or rewrite if necessary, and may attempt to informally resolve the concern or accept the concern for a Level I review. Dkt. 38 ¶ 6; Dkt. 38-1 at 5. If the Level 0 resolution request is informally resolved, an inmate may appeal the informal resolution if he is not satisfied. Dkt. 38 ¶ 6; Dkt. 38-1 at 6.

If the resolution request proceeds beyond Level 0, the Resolution Specialist transcribes the handwritten concern onto a DOC 05-166 Level I Resolution Response and a copy is sent to the inmate. Dkt. 38 ¶ 6; Dkt. 38-1 at 14. The Resolution Specialist is the respondent at Level I. Dkt. 38 ¶ 6; Dkt. 38-1 at 14.

Incarcerated individuals may appeal responses to Level I resolution requests to Level II. Dkt. 38 ¶ 6; Dkt. 38-1 at 14–15. The handwritten concern is transcribed onto a DOC 05-168 Level II Resolution Response and a copy is sent to the inmate. Dkt. 38 ¶ 6; Dkt. 38-1 at 14. The Level II appeal is assigned to an employee/contract staff. Dkt. 38 ¶ 6; Dkt. 38-1 at 15. A Resolution Specialist who responded at Level I cannot review a Level II appeal. Dkt. 38-1 at 15. Once the review is complete, the Superintendent or Health Services Administrator issues a formal response. Dkt. 38 ¶ 6; Dkt. 38-1 at 15.

If an incarcerated individual appeals the denial of a Level II response, the appeal is reviewed/accepted/transcribed onto a DOC 05-169 Level III Resolution Response and sent to the Headquarters Resolution Program Unit. Dkt. 38 ¶ 6; Dkt. 38-1 at 15. The appeal is assigned for review by the Resolution Program Manager/designee. Dkt. 38 ¶6; Dkt. 38-1 at 15. Once the review is complete, the Deputy Secretary/designee issues the formal response. Dkt. 38 ¶ 6; Dkt. 38-1 at

1 | 15. This is the Department's final level of review and cannot be appealed. Dkt. 38 ¶ 6; Dkt. 38-1 at
2 | 15.
3 |       Emergency resolution requests are "those that the resolution would be too late if handled
4 | through routine administrative or resolution channels" and meet certain emergency criteria. Dkt. 38
5 | ¶ 7; Dkt. 38-1 at 12. Emergency resolution requests are immediately addressed to determine if they
6 | meet the definition of an emergency, and an individual may appeal a non-emergent determination.
7 | Dkt. 38 ¶ 7; Dkt. 38-1 at 13. If an emergency resolution request is placed in the resolution box
8 | rather than handed to any employee/contract staff with notice that there is an emergency concern,
9 | the resolution request will be processed as a routine request. Dkt. 38-1 at 12–13. Further, if an
10 | emergency resolution request is deemed non-emergent, it will then be processed through normal
11 | resolution channels. Dkt. 38 ¶ 7; Dkt. 38-1 at 13.
12 |       Incarcerated individuals have twenty working days from the date of the incident to file a
13 | resolution request. Dkt. 38 ¶ 8; Dkt. 38-1 at 6. They then have ten working days from the time they
14 | receive a response to Levels I and II to file an appeal. Dkt. 38 ¶ 8; Dkt. 38-1 at 6. Inmates cannot
15 | appeal a Level III decision. Dkt. 38 ¶ 8; Dkt. 38-1 at 15.
16 |       Here, the evidence shows Plaintiff filed five resolution requests during his time at WCC.
17 | Dkt. 38 ¶ 9; Dkt. 38-1, Exs. 2–6. Two of those resolution requests relate to Plaintiff's CPAP
18 | machine. Dkt. 38-1, Exs. 4, 5. The evidence further shows that, prior to filing any resolution
19 | requests relating to his CPAP machine, Plaintiff sought resolution of his issue through initial,
20 | informal channels. *See* Dkt. 37, Mick Dec.; Dkt. 35, Brickner Dec.
21 |       Plaintiff first sought informal resolution through Defendant Mick. Defendant Mick is the
22 | Property Sergeant at WCC. Dkt. 37 ¶ 2. As Property Sergeant, Defendant Mick ensures incoming
23 | property to WCC is authorized and issues personal property and state-issued clothing to inmates.
24 |

*Id*. In the event that a CPAP machine is in the property room for an incarcerated individual, Defendant Mick waits until he receives notification from both Medical and the Captain's office that the inmate is approved to have it. *Id*. ¶ 3. Once approved, the CPAP machine is delivered to inmate's housing unit. *Id*.

On February 28, 2022, Defendant Mick received an email from ARNP Droege asking how Plaintiff could retrieve a CPAP machine from property. *Id*. ¶ 4. Defendant Mick responded on March 1, 2022, stating, "I have it in property. Let me know when you get it authorized for him to have it." *Id*. ARNP Droege replied on March 2, 2022, stating, "Dr. Rodakowski said that he may have it. The next step would be for custody to move him to a cell that can accommodate the set up." *Id*. In a March 3, 2022, response, Defendant Mick stated, "Please let us know what unit [Plaintiff] is going to and we will deliver it there." *Id*.

On March 22, 2022, Plaintiff sent Defendant Mick an informal request by kite about retrieving the CPAP machine from property. *Id*. ¶ 5. Defendant Mick responded on March 24, 2022, stating, "Medical has to issue you a 'HSR' and then notify custody that you need a cell with a power supply." *Id*.

On March 24, 2022, Plaintiff submitted resolution request Log ID No. 22753344 related to his CPAP machine. Dkt. 38-1, Ex. 5, at 37. Plaintiff marked the request as an emergency, but did not hand it to a staff member to process it as emergent; rather, the resolution request was found in the unit box. Dkt. 34, Bourne Dec., at ¶ 5. As a result, the resolution request was processed as a normal, non-emergent resolution request. *Id*. Further, in the request, Plaintiff's suggested remedy was to provide Plaintiff with a CPAP machine, gear, and power strip. *Id*. ¶ 4.

On March 29, 2022, Plaintiff submitted resolution request Log ID No. 22752937, also related to his CPAP machine, and also marked as an emergency. Dkt. 38-1, Ex. 4, at 34. Defendant

REPORT AND RECOMMENDATION - 7

Bourne, a Resolution Specialist, initially deemed the resolution request as non-emergent on March 29, 2022, and processed it through normal channels. Dkt. 34 ¶ 5. The request sought the same suggested remedy as Log ID No. 22753344. *Id.* ¶ 4.

Due to a backlog in responses to resolution requests, the Department had one staff member working on the newest resolution requests, and another staff member working on the oldest requests. *See* Dkt. 34 ¶ 3. When Defendant Bourne reviewed Log ID No. 22753344, the earlier of the two requests relating to Plaintiff's CPAP machine, she had already reviewed Log ID No. 22752937, the later of the two requests, and therefore labeled Log ID No. 22753344 as a duplicate and closed it on April 7, 2022. *Id.* ¶ 4.

Prior to closing Log ID No. 22753344, on April 4, 2022, Defendant Bourne sent Log ID No. 22752937 to Health Services Manager 1 in the medical department for review since the request related to Plaintiff's CPAP machine. *Id.* ¶ 6. Health Services Manager 3 Lee responded on April 11, 2022, stating, "[t]his resolution request was initiated on 3/29/2022. From [the] Medical Record, I show that Mr. Haynes has his CPAP machine and supplies. I am unclear if there are any other issues related to the resolution." Dkt. 34-1, Ex. 1, at 2. Defendant Bourne used this answer to respond to Log ID No. 22752937 at Level 0 on April 11, 2022, noting that she was attempting informal resolution and stating, "This resolution request was initiated on 3/29/2022. From [the] Medical Record, I show that Mr. Haynes has his CPAP machine and supplies." Dkt. 34 ¶ 7; Dkt. 38-1 at 35.

Despite Defendant Bourne's inaccurate statement regarding Plaintiff having retrieved his CPAP machine, Plaintiff did not appeal this informal resolution attempt, meaning that Log ID No. 22752937 closed at Level 0. Dkt. 34 ¶ 7. As stated above, if an individual does not feel their concern has been resolved through the informal response, they can appeal the response by

REPORT AND RECOMMENDATION - 8

1 | submitting a new resolution request and including the same Log ID number as the one on the
2 | informal response. Dkt. 38 ¶ 6; Dkt. 38-1 at 8, 14.

3 |     In the midst of the procedure related to Plaintiff's two resolution requests about his CPAP
4 | machine, Plaintiff was also communicating with other WCC staff members about the CPAP
5 | machine. *See* Dkts. 35, Brickner Dec.; Dkt. 37. On March 25, 2022, Plaintiff sent a kite requesting
6 | approval for a health status report ("HSR"). Dkt. 35 ¶ 5; Dkt. 35-1, Ex. 2, at 4. Defendant Brickner
7 | then met with Plaintiff on March 30, 2022, to explain the process of receiving a CPAP machine
8 | from property. Dkt. 35 ¶ 4. She also responded to Plaintiff's kite on March 30, 2022, stating,
9 | "After meeting with you today (3/30) I have put you in to be scheduled with a provider. Please
10 | bring the Release of Records paper I handed you to the appointment." *Id*. ¶ 5; Dkt. 35-1 at 4.
11 | Defendant Brickner also sent an email to the Health Services schedulers on March 30, 2022,
12 | stating, "Please schedule I/I Haynes #898224 to be seen by a provider to determine CPAP needs."
13 | Dkt. 35 ¶ 6; Dkt. 35-1, Ex. 3, at 6.

14 |     On April 14, 2022, Plaintiff sent another kite to Defendant Mick about the location of his
15 | CPAP machine. Dkt. 37 ¶ 6. On April 15, 2022, Defendant Mick responded, "Your CPAP is here
16 | in property." *Id*. Plaintiff was subsequently transferred from WCC to Coyote Ridge Corrections
17 | Center ("CRCC") on April 28, 2022. Dkt. 36-1, Faber Dec., Ex. 1, at 2.

18 |     Based on this evidence, the Court finds Defendants have carried the initial burden of
19 | showing the absence of exhaustion in this case. The undisputed evidence presented by Defendants
20 | show there was a Resolution Program in place at WCC at the time of the events referenced in the
21 | Complaint. Plaintiff was aware of the Resolution Program and participated in the resolution request
22 | process while housed at WCC. Plaintiff, however, did not complete the resolution request process
23 | for the claim alleged in the Complaint.
24 |

REPORT AND RECOMMENDATION - 9

C.   Plaintiff's Response

The burden now shifts to Plaintiff, "who must show that there is something particular in his case that made the existing and generally available remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172). Acts by prison officials preventing the exhaustion of administrative remedies may make administrative remedies effectively unavailable. *See Nunez v. Duncan*, 591 F.2d 1217, 1224-25 (9th Cir. 2010). "The ultimate burden of proof, however, remains with the defendants," and the evidence must be viewed in the light most favorable to the plaintiff. *Paramo*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172). The Supreme Court held there are three circumstances in which an administrative remedy is not capable of potential relief:

> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Ross v. Blake,* 578 U.S. 632, 643–44 (2016).

In his sworn Response to the Motion, Plaintiff argues: (1) he could not further appeal Log ID No. 22752937 because he was transferred from WCC to CRCC, "making W.C.C. administrative remedies obviously futile and a dead end so further 'exhaustion' [was] impossible," (Dkt. 40 at 6); (2) he did not appeal Log ID No. 22752937 after his transfer because remedies such as monetary or injunctive relief were not available to him (Dkt. 41 at 5); and (3) the kites and tort claim he submitted about his CPAP machine should be considered part of the exhaustion process, (Dkt. 41 at 5). The Court will consider these arguments in turn.

First, Plaintiff alleges he was unable to exhaust the resolution request he submitted at WCC because he was transferred to another institution, CRCC. Dkt. 40. However, as set forth in Defendants' evidence, the Resolution Program Manual addresses this very situation where an incarcerated individual initiates the resolution request process and wishes to continue the process even if they are transferred to another facility. *See* Dkt. 38-1 at 23. Specifically, the Manual provides,

> If an individual has been transferred and wishes to file a Resolution Request *or appeal* with the Resolution Program at a previous facility, they can submit a Resolution Request to the Resolution Specialist at their current facility and it will be forwarded to their previous facility. Property or funds concerns must be submitted within 90 days of the transfer. All other concerns must be submitted within 20 working days from the date of the incident. The appeal timeframe remains at 5 days from receipt of the response.

*Id*. (emphasis added). The Manual further provides that if an individual has been transferred, a Resolution Specialist will arrange an interview with the individual by telephone or other means. *Id*. at 15. Plaintiff does not assert he was prevented from pursuing his appeal by CRCC officials; rather, as Defendants have shown, the Resolution Program's appeal process was fully available to Plaintiff at CRCC, he simply chose not to use it.

Second, Plaintiff contends he did not appeal his resolution request because remedies such as monetary or injunctive relief were not available to him, presumably once he was transferred from WCC. *See* Dkt. 41 at 5. As set forth in Defendants' evidence, the Resolution Program does not provide monetary awards. *See* Dkt. 38-1 at 24. Further, with respect to any type of "injunctive" relief, the Manual provides for administrative remedies such as correction of records, administrative actions, and/or a change in a local or Department policy or practice. Dkt. 38-1 at 21. Had Plaintiff fully and properly utilized the Resolution Program to seek relief for his grievance related to the CPAP machine, such options for administrative remedies would have been available

1 | for him. Thus, the Court will not excuse Plaintiff's failure to exhaust his administrative remedies
2 | on this basis.

3 | And lastly, Plaintiff argues that the emergency kites and tort claim he submitted should serve as part of the exhaustion process through the Resolution Program. Dkt. 41 at 5. However, "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added); *see also Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010); *Harvey v. Jordan*, 605 F.3d 681, 683-84 (9th Cir. 2010). Accordingly, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court[.]" *Woodford*, 548 U.S. at 88.

Plaintiff's contention that he complained of his claim through kites and a tort claim is not sufficient to show proper exhaustion. *See* Dkt. 41 at 5. He was required to use the Resolution Program to properly exhaust his claims. His attempt to exhaust through methods other than the approved Resolution Program fails to satisfy exhaustion or show the Resolution Program was unavailable. *See Panaro v. City of North Las Vegas*, 432 F.3d 949, 953 (9th Cir. 2005) (finding participation in an internal affairs investigation did not satisfy exhaustion).

As Plaintiff did not fully follow the proper grievance/resolution procedures available at WCC, Plaintiff has not overcome Defendants' showing that Plaintiff failed to exhaust the administrative remedies available to him. Therefore, the Court concludes Plaintiff failed to properly exhaust the Eighth Amendment claim alleged in his Complaint and the Complaint should be dismissed without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino,* 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."); *Carrea v. California*, 551 F. App'x 368, 369 (9th Cir. 2014) (remanding for the

entry of dismissal without prejudice because the proper remedy for non-exhaustion is dismissal without prejudice). Accordingly, the Court recommends the Motion for Summary Judgment (Dkt. 33) be granted.

## IV. CONCLUSION

For the above stated reasons, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 33) be granted, the Complaint be dismissed without prejudice, and this case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **August 11, 2023**, as noted in the caption.

Dated this 25th day of July, 2023.

Grady J. Leupold
United States Magistrate Judge